UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| KENNETH NATISS,<br>    *Plaintiff*,<br>v.<br>PATRICIA NATISS, REHANA LATIF,<br>    *Defendants*. | No. 3:24-cv-01581-MPS |

**RULING ON MOTION TO DISMISS**

The plaintiff, Kenneth Natiss ("Kenneth"), brings this action against his estranged wife, Patricia Natiss ("Patricia"), and her mental health provider, Rehana Latif, alleging, among other claims, that the defendants committed fraud in providing false testimony and offering fabricated evidence in an underlying case brought by Patricia against Kenneth in Connecticut Superior Court (the "Underlying Action" or "UA"). Latif moves to dismiss all claims against her under Federal Rule of Civil Procedure 12(b)(6). ECF No. 45. For the following reasons, I find that Kenneth has failed to state a claim against Latif and grant her motion.

**I.   FACTUAL AND PROCEDURAL HISTORY**

The following facts, which I accept as true for purposes of this ruling, are drawn from the Amended Complaint and exhibits, ECF Nos. 24–26, as well as briefs that Kenneth filed and court orders in the Underlying Action and the related interlocutory appeal ("IA") to the Connecticut Appellate Court, of which I take judicial notice.[1]

---

[1] *See Natiss v. Natiss*, No. FST-CV21-5024830-S (Conn. Super. Ct.); *Natiss v. Natiss*, No. AC 47724 (Conn. App. Ct.); *see also Beauvoir v. Israel*, 794 F.3d 244, 248 n.4 (2d Cir. 2015) (citing *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 157 (1969) ("we may properly take judicial notice of the record in that [separate] litigation between the same parties who are now before us")).

1

Kenneth and Patricia married in 1998 and lived together in a home in Greenwich, Connecticut until 2020. ECF No. 24 ¶¶ 12–13. During the marriage, cameras were present "in plain sight throughout the house for years." *Id.* ¶ 21. Latif began serving as Patricia's "primary mental health provider in or around 2017. *Id.* ¶ 7.

Patricia commenced a marital dissolution action in Superior Court on October 12, 2020. *Id.* ¶ 14. In that case, Patricia disputed a premarital agreement and demanded Kenneth pay her $20 million. *Id.* ¶ 16.

The following month, Patricia found recordings from the home cameras and reported to Greenwich Police that Kenneth had recorded her without her knowledge. *Id.* ¶¶ 17, 22. As a result of Patricia's allegations, the police arrested Kenneth, and Patricia sought custody of their son and obtained a court order awarding her exclusive possession of the home. *Id.* ¶¶ 17, 19. On June 2, 2021, Patricia sued Kenneth in the Underlying Action in Superior Court, seeking a prejudgment remedy and alleging that she suffered emotional distress and had been diagnosed with post-traumatic stress disorder after she discovered the recordings. *Id.* ¶¶ 20–22. Kenneth incurred "hundreds of thousands of dollars in legal fees and expenses" in the wake of these allegations. *Id.* ¶ 18.

On June 28, 2021, nearly four weeks after the filing of the Underlying Action, Patricia's counsel "communicated to Plaintiff's Dr. Latif about the lawsuit, about their interest in Dr. Latif's records, and[] about their desire that Dr. Latif confer with their hired [damages] expert[,] Dr. Mantell." UA Dkt. No. 213 at 7. Mantell spoke with Latif while preparing his report and relied on information she provided about her treatment of Patricia. *Id.* at 41–42.

On September 16, 2021, Patricia and Latif met to discuss an upcoming hearing on the motion for prejudgment remedy. ECF No. 24 ¶¶ 25, 28; UA Dkt. No. 228 ¶ 10. Patricia paid Latif

to provide medical records and testify at the hearing. ECF No. 24 ¶ 29; UA Dkt. No. 228 ¶ 11 (alleging that on September 17, 2021 "Latif was employed by and working for the Plaintiff's counsel"). On September 20, 2021, an attorney for Latif emailed Patricia's counsel to discuss Latif's testimony. UA Dkt. No. 213 at 7. One hour later, Latif herself contacted Patricia's counsel and asked him to send her Mantell's expert reports, which contained a "road map" for damages in the Underlying Action. *Id.*; IA Dkt. No. 242559 at 2–3. Counsel provided these reports to Latif the following morning, one hour before the hearing was scheduled to begin. UA Dkt. No. 213 at 7; IA Dkt. No. 242559 at 3.

Kenneth alleged in the state-court proceedings that "[i]n the evening of September 21, 2021, and into the late hours of September 22, 2021, Dr. Latif fabricated her recorded medical history of [Patricia] to make it consistent with [the damages expert's] reports by removing content, inserting content including a retroactive PTSD diagnosis, and, concealed original medical records and supplanted them with fabricated ones." UA Dkt. Nos. 213 at 7–8; *see also* IA Dkt. No. 242559 at 3 (alleging that "most of these fraudulent actions occurred within one day of Dr. Latif's expected testimony"). More specifically, Kenneth alleges that:

> (1) Latif falsified Patricia's PTSD diagnosis; (2) Latif retroactively inserted the PTSD diagnosis into Patricia's medical records just hours before the documents were produced by Patricia and Latif's testimony in the PJR Hearing; (3) Latif erased medical records contradicting other allegations made by Patricia and testimony elicited at the PJR Hearing; and (4) Latif falsely inserted facts harmful to [Kenneth].

ECF No. 24 ¶ 43. Patricia's counsel produced these allegedly fabricated records to Kenneth's counsel immediately before Latif's testimony on September 24, 2021. UA Dkt. No. 134 at 11–12. During the hearing, Patricia introduced these records, holding them out as accurate. ECF No. 24 ¶ 31. Latif testified that she had diagnosed Patricia with PTSD and also represented that the records were accurate and "contained contemporaneous notes Latif took during or immediately following their psychiatric counseling sessions." *Id.* ¶¶ 32–33.

3

At the hearing, Kenneth's counsel identified and asked Latif about perceived irregularities with the records, including that one record from February 2021 mentioned the death of Patricia's father months before he died in June 2021, and that many of the records had been signed on September 22, 2021. UA Dkt. No. 134 at 12–14. Nevertheless, on February 28, 2022, the Superior Court issued a $1.5 million prejudgment remedy against Kenneth. ECF No. 24 ¶¶ 2, 36. As a result, Kenneth moved to compel Patricia's electronic health record ("EHR") data and engaged an expert firm to conduct a forensic investigation. *Id.* ¶¶ 37–39. The forensic report indicated that the records introduced at the hearing were "forged, fabricated, and[] changed in the days before the evidence was produced to [Kenneth], and in the days before the records were to be used by Patricia to guide Latif's testimony." *Id.* ¶ 41; *see also* ECF Nos. 25–26.

The Connecticut Superior Court held sanctions hearings on November 28, 2023 and March 27, 2024. UA Dkt. No. 207.01. After the first hearing, the court directed Kenneth to file "an affidavit with the expenses incurred in the forensic investigation of Dr. Latif's medical records, including any attorney's fees incurred." UA Dkt. No. 183. On April 3, 2024, Latif declined to answer questions about fabrication of the records, citing her Fifth Amendment privilege against self-incrimination. ECF No. 24 ¶ 48. The Superior Court drew an adverse inference from Latif's invocation of the privilege and issued a sanctions order against Patricia for "$64,352.56, which includes $54,258.75 in forensic analysis of Dr. Latif's records and $10,093.81 in legal fees related to the compelling of and the production and disclosure of the records at issue." UA Dkt. No. 207.01; *see* ECF No. 24 ¶ 49. Kenneth alleges in the case before me that this amount does not fully compensate him for the fees and costs he incurred in defending the Superior Court action or reflect damages stemming from the entry of the prejudgment remedy. ECF No. 24 ¶ 51.

Kenneth filed a complaint in Superior Court on September 4, 2024; Patricia removed the

case to this Court. ECF No. 1. After Kenneth amended his complaint, Patricia filed an Answer. ECF No. 41. Latif filed the present motion to dismiss. ECF No. 45. Against Latif, Kenneth brings claims of (1) civil forgery under Connecticut General Statutes § 52-565, (2) common-law fraud, (3) violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), (4) violation of New York General Business Law § 349, (5) common-law fraudulent concealment, and (6) common-law civil conspiracy.

## II.   LEGAL STANDARD

To avoid dismissal under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). I accept as true all of the complaint's factual allegations when evaluating a motion to dismiss, *id.*, and must "draw all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (citation omitted).

## III.   DISCUSSION

### A. Conflict of Law

Jurisdiction in this case is based on diversity of the parties—Kenneth is a citizen of Connecticut and Latif is a citizen of New York. Kenneth brings claims based on the laws of both states. Thus, where there is a conflict of laws between Connecticut and New York, I must determine which state's law applies. *Cohen v. Roll-A-Cover, LLC*, 131 Conn. App. 443, 465–66

5

(2011) ("The threshold choice of law issue in Connecticut, as it is elsewhere, is whether there is an outcome determinative conflict between applicable laws of the states with a potential interest in the case."). Here, a conflict is apparent for Count Seven, the fraudulent concealment claim, because a cause of action for fraudulent concealment exists under New York law but not under Connecticut law. Kenneth concedes as much in his complaint, noting that he brings a fraudulent concealment claim "to the extent New York law applies." ECF No. 24 ¶ 99. I find, however, that Connecticut law applies.

A federal court sitting in diversity must apply the conflict of law rules of the state in which it sits. *Klaxon & Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487 (1941). In determining conflict of laws for torts, the Connecticut Supreme Court has cited the Restatement (Second) of Conflict of Laws. *W. Dermatology Consultants, P.C. v. VitalWorks, Inc.*, 322 Conn. 541, 557 (2016). Section 145 of the Restatement provides in relevant part that "[t]he rights and liabilities of the parties with respect to an issue [in tort] are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." 1 Restatement (Second), Conflict of Laws § 145 (1).

> Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. These contacts are to be evaluated according to their relative importance with respect to the particular issue.

1 *id.* § 145 (2). Here, the state with the most significant relationship to the occurrence of the tort and parties is Connecticut. Even if I were to assume that Patricia and Latif discussed the alleged concealment and that Latif fabricated records in New York, Kenneth alleges that Latif carried out the concealment for the sole purpose of impacting the Underlying Action in Connecticut. Any injury to Kenneth would have taken place in Connecticut, where the records were produced and

6

Latif testified, and which is the only state in which Kenneth interacted with Latif. Thus, notwithstanding Latif's domicile, the location where she may have allegedly fabricated the records, or where she may have been paid, Connecticut has a more significant relationship to this case. This is equally true for all claims in this case, as they all center around the same alleged conduct involving creating false evidence for a hearing in a Connecticut court.

Although Connecticut recognizes fraudulent concealment as a method by which statute of limitations may be tolled, *see* Conn. Gen. Stat. § 52-595, that statute does not create a separate cause of action, and Kenneth points to no Connecticut case law recognizing such a cause of action. The fraudulent concealment claim in Count Seven is DISMISSED.

Latif also argues that a conflict of laws arises between the CUTPA and New York Business Law claims, which Kenneth describes as "the primary unfair and deceptive trade practices acts of their respective states." ECF No. 48 at 23. But as Kenneth also points out, Latif fails to identify how these laws are in conflict with each other. I thus decline to analyze whether the laws are in conflict and address the claims under both statutes in this ruling. *See Ultimate Nutrition, Inc. v. Leprino Foods Co.*, 747 F. Supp. 3d 371, 378 (D. Conn. 2024) (declining to conduct a choice-of-law analysis where "[n]either party has identified an outcome-determinative conflict of law").[2]

### B. Litigation Privilege

Kenneth's claims against Latif under Connecticut law are barred by the litigation privilege.[3] In Connecticut, the litigation privilege "protects the statements or actions that any individual makes, in the context of a judicial proceeding, from giving rise to most types of tort

---

[2] I also reject Latif's arguments that Kenneth's civil conspiracy claim is precluded under Connecticut law, which requires such a claim "must be joined with an allegation of a substantive tort." *Macomber v. Travelers Prop. & Cas. Corp.*, 277 Conn. 617, 636 (2006). Kenneth's other claims, which he incorporates by reference, are the torts underlying the alleged conspiracy.
[3] This does not include the New York statutory claim, which I discuss in the next section.

7

claims." *Cruz v. Signify N. Am. Corp.*, No. 3:22-CV-1081 (SVN), 2023 WL 3499579, at *5 (D. Conn. May 17, 2023). "Federal courts in Connecticut routinely apply the state's litigation privilege to claims that challenge representations made in underlying state court litigation." *Id.* (internal quotation marks omitted). The Connecticut Supreme Court has identified three factors to consider when determining whether policy considerations support applying absolute immunity based on the litigation privilege to a particular cause of action:

> (1) whether the alleged conduct subverts the underlying purpose of a judicial proceeding in a similar way to how conduct constituting abuse of process and vexatious litigation subverts that underlying purpose; (2) whether the alleged conduct is similar in essential respects to defamatory statements, inasmuch as the privilege bars a defamation action; and (3) whether the alleged conduct may be adequately addressed by other available remedies.

*Dorfman v. Smith*, 342 Conn. 582, 592–93 (2022) (citing *Simms v. Seaman*, 308 Conn. 523, 545 (2013)). The Connecticut Supreme Court "recognize[s] a distinction between attempting to impose liability [on] a participant in a judicial proceeding for the words used therein and attempting to impose liability [on] a litigant for his improper use of the judicial system itself." *Id.* at 596. The litigation privilege applies only "to claims premised on factual allegations that challenge the defendant's conduct in a properly brought judicial proceeding" and does not apply to "causes of action alleging the improper use of the judicial system." *Id.*

Here, Kenneth's allegations of Latif's conduct are premised on her testimony and submission of records for use in the prejudgment remedy hearing in the Underlying Action. In response to the motion to dismiss, however, he now argues that Latif's conduct was not limited to her preparation for and participation in the prejudgment remedy hearing but encompasses the filing of the Underlying Action, like a claim for vexatious litigation or abuse of process. Specifically, Kenneth alleges that Latif and Patricia "conspired in knowingly filing the false lawsuit to get around the economic barriers of a frustrating prenuptial agreement, and, to cause other injury to

8

the Plaintiff" and thus that "the very purpose of the proceeding premised upon the lies and deception and forgery and fraud of the Defendants was illegitimate, fabricated, and, improper." ECF No. 48 at 5.[4]

This theory fails because Kenneth has not alleged it in his complaint. To the contrary, Kenneth's complaint alleges Latif's chicanery took place during the few days and hours immediately preceding the September 22–24, 2021 prejudgment remedy hearing, over three and a half months after Patricia filed the Underlying Action. *See* ECF No. 24 ¶ 41 ("[Kenneth's expert] determined that the treatment record evidence that was produced by Patricia through Latif [was] forged, fabricated, and[] changed in the days before the evidence was produced to Plaintiff, and in the days before the records were to be used by Patricia to guide Latif's testimony."); *id.* ¶ 43 ("The forensic investigation [by Kenneth's expert] of the [medical record] data revealed, among other things, that . . . Latif retroactively inserted the PTSD diagnosis into Patricia's medical records just hours before the documents were produced by Patricia and [before] Latif's testimony in the PJR Hearing."); *see also id.* ¶ 28 (alleging that "[o]n September 16, 2021, Patricia visited Latif to discuss getting ready for the court hearing" (internal quotation marks omitted)). And these allegations reflected the position Kenneth advocated to the state courts in the Underlying Action and Interlocutory Appeal. Contrary to Kenneth's argument in his brief here that Latif conspired in the filing of the lawsuit, he asserted to the Connecticut Superior Court that Patricia's counsel first "communicated to Plaintiff's Dr. Latif about the lawsuit" and her potential participation nearly four weeks after the suit was filed. UA Dkt. No. 213 at 7. Kenneth's statements to the Appellate Court in the interlocutory appeal are also clear that Latif allegedly began fabricating the records

---

[4] Although Kenneth cites Paragraph 55 of the complaint, that paragraph describes Latif's alleged motives for fabricating the records. It does not allege that Latif conspired with Patricia in filing the lawsuit in the Underlying Action.

9

"to conform to expert testimony" only after she received the report of Patricia's expert witness on the day before the hearing was set to begin. IA Dkt. No. 242559 at 3. After receiving the report, Latif allegedly fabricated her records of Patricia's medical history "[i]n the evening of September 21, 2021, and into the late hours of September 22, 2021." UA Dkt. Nos. 213 at 7–8. Nowhere in his complaint in this action or in any pleading in the Underlying Action to which he points did Kenneth suggest that "Latif knowingly assisted [Patricia] in the initiation of a false lawsuit," as he now contends. ECF No. 48 at 9; *see Abira Med. Lab'ys, LLC v. Aetna, Inc.*, No. 3:24-CV-00931 (SVN), 2025 WL 448443, at *8 (D. Conn. Feb. 10, 2025) ("It is well-settled that a plaintiff cannot amend [his] complaint by asserting new facts through an opposition to a motion to dismiss. Accordingly, the Court cannot rely on this representation in the opposition brief." (citation omitted)).

At most, the reasonable inference to be drawn from Kenneth's allegations in the complaint is that Latif knowingly assisted Patricia in falsifying evidence in support of the claims in the Underlying Action, and that the extent of Latif's participation in any alleged conspiracy—fabricating records and giving false testimony—was limited to the days leading up to the prejudgment remedy hearing and the hearing itself. The claims against Latif challenge no more than her participation in the Underlying Action; they do "not require consideration of whether the underlying purpose of the litigation was improper." *Simms*, 308 Conn. at 546; *see also Dorfman*, 342 Conn. at 596–97 ("[I]t is not enough for the plaintiff to allege that the misconduct at issue constituted an improper use of the judicial system, but, rather, the cause of action itself must challenge the *purpose* of the underlying litigation or litigation conduct."). A claim that Latif defrauded Kenneth or violated CUTPA by falsifying her records and testimony does not by itself call into question the purpose of bringing the action. Because these claims may be decided without

10

consideration of the propriety of the Underlying Action, Latif's conduct does not "subvert[] the underlying purpose of a judicial proceeding in a similar way to how conduct constituting abuse of process . . . subverts that underlying purpose." *Dorfman*, 342 Conn. at 592–93. Further, because the claims here are based entirely on Latif's allegedly false statements to the court in the Underlying Action, whether given during oral testimony or submitted in the form of falsified records, "the alleged conduct is similar in essential respects to defamatory statements." *Id; see also id.* at 618–19 (holding that the litigation privilege bars CUTPA claim premised on "a business practice of filing false discovery responses" because "these claims merely challenge the making of false statements").

Finally, the alleged conduct has already been adequately addressed by other available remedies. The Superior Court granted a sanctions order in the Underlying Action designed to compensate Kenneth for the costs involved in compelling the medical records at issue and demonstrating that they had been falsified.[5] As I have already found that Latif's alleged misconduct was limited to her preparation and participation in the prejudgment remedy hearing, there is no basis to claim that she is liable to Kenneth for other expenses and fees incurred in the Underlying Action.[6]

---

[5] Although not specifically mentioned in the complaint here, it appears that the Superior Court did not reimburse Kenneth for $21,055 that he identified as legal fees incurred "in connection with the forensic investigation of Dr. Latif's records." UA Dkt. Nos. 187, 207.01. To the extent Kenneth believes this decision was in error, the remedy would have been to seek reconsideration of that order or seek its reversal on appeal.

[6] The litigation privilege only protects Latif from civil liability in this instance; dismissal of these claims should not be read as an indication that witnesses who are not themselves parties in an underlying case may present false testimony or evidence with impunity. Although she denies any wrongdoing, Latif still faces consequences beyond this case that appear to have put her career in jeopardy. The complaint notes that Latif already "has been referred to the Office of Professional Medical Conduct in New York," ECF No. 24 ¶ 6, and the state court's sanctions order, though addressed to Patricia, strongly indicates that at least one judge believes that Latif falsified the records. *See* UA Dkt. No. 207.01. Thus, Latif's credibility will likely be challenged in any future

For these reasons, the litigation privilege bars Kenneth's claims arising under Connecticut law. The motion to dismiss is GRANTED as to Counts One, Two, Five, and Eight.

### C. Violation of New York General Business Law § 349

In Count Seven, Kenneth brings a claim for a violation of a New York statute, General Business Law § 349, based on Latif's residence in New York and her alleged conduct in falsifying business records there. That statute declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service *in this state*" and provides a cause of action to "any person who has been injured" by a violation of the section. N.Y. Gen. Bus. Law § 349(a), (h) (emphasis added). Kenneth's claim fails because Latif's acts are beyond the territorial reach of the statute.

In determining the geographic scope of Section 349, courts "focus on the location of the transaction, and in particular the strength of New York's connection to the allegedly deceptive transaction, rather than 'on the residency of the parties.'" *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 122 (2d Cir. 2013) (citing *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1196 (2002)). In *Goshen*, New York's highest court held that allegations of "hatching a scheme or originating" deceptive acts or trade practices in New York do not constitute a claim under Section 349 because the statute also requires "that the transaction in which the consumer is deceived must occur in New York." 774 N.E.2d at 1195. As the court explained, "[t]he origin of any . . . conduct is irrelevant if the deception itself . . . did not result in a transaction in which the consumer was harmed." *Id.* at 1196. Here, any alleged deception occurred when Latif testified and submitted records for use at the prejudgment remedy hearing in Connecticut. Kenneth was a Connecticut resident, the

---

case in which she offers expert testimony. *See* ECF No. 24 ¶ 6. Finally, Latif's invocation of the Fifth Amendment at the sanctions hearings indicates that she was aware of her exposure to potential criminal prosecution for the conduct alleged here. *See* UA Dkt. No. 207.01.

hearing was presided over by a Connecticut judge, and the hearing took place in a Connecticut courtroom. Thus, as in *Goshen*, even if the alleged events that led to this transaction—Latif's treatment of Patricia, Latif's hiring in the weeks before the hearing, communications regarding her testimony, and the actual fabrication of records—all occurred in New York, this conduct is irrelevant unless it results in a "transaction in which the consumer is deceived" in New York. Because the only potential "transaction" involved here was Latif's testimony at the Connecticut prejudgment remedy hearing, including her presentation of the fabricated medical records in court, the alleged conduct falls outside of the geographic scope of Section 349. As such, the claim fails, and I need not determine the merits of the claim or whether it is barred by the litigation privilege.[7]

For these reasons, Count Seven is DISMISSED.

## IV.   CONCLUSION

For the foregoing reasons, the Motion to Dismiss is GRANTED. The Clerk is instructed to terminate Latif as a defendant.

IT IS SO ORDERED.

                                                                            /s/
                                        Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
       September 18, 2025

---

[7] I also decline to address Latif's other arguments as to why Section 349 does not apply here.